IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| J.W. and M.R.W. individually and as parents, guardians and next friends of A.W. f/d/a/ A.M., a minor child, and M.W. f/k/a K.C., a minor child,<br><br>           Plaintiffs,<br><br>vs.<br><br>STATE OF UTAH; UTAH STATE DEPARTMENT OF HUMAN SERVICES; ROBIN ARNOLD-WILLIAMS, individually and in her former capacity as Executive Director of Utah State Department of Human Services; LISA-MICHELLE CHURCH, in her capacity as executive director of Utah State Department of Human Services; DIVISION OF CHILD AND FAMILY SERVICES; RICHARD ANDERSON, individually and in his capacity as Director of the Division of Child and Family Services; CAROLYN HANSEN, individually and in her official capacity; KOLYN TACY, individually and in her official capacity; and LAURIE ZUMBRUNNEN, individually and in her official capacity; and DOES I-XX, in their individual and official capacities,<br><br>           Defendants. | MEMORANDUM DECISION AND ORDER<br><br><br>Case No.  2:05CV00968K |

This matter is before the court on the Defendants' Motion to Dismiss. A hearing on the motion was held on April 10, 2006. At the hearing, Plaintiffs were represented by S. Brook Millard. Defendants were represented by Barry Lawrence. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the motion under advisement, the court has further considered the law and facts relating to the motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

## I. FACTUAL BACKGROUND

This action arises from the alleged "inappropriate physical and sexual behavior" by a six year old foster child (identified as W.C.C.) against his foster siblings and Plaintiffs' children (identified as A.W. and M.R.W.). Amended Complaint, ¶ 2.

At all relevant times, J.W. and M.R.W. were state licensed foster parents. They accepted placement of A.W. and subsequently adopted her. Later, they accepted foster placement of M.W., with the intention of adoption as well. They understood that M.W. had a six-year old brother, W.C.C., who also needed a foster home. DCFS encouraged placement of W.C.C. with them. DCFS told them that W.C.C. had been diagnosed with ADHD and occasionally told lies, but otherwise was a "sweet kid."

Shortly after accepting W.C.C. as a foster child, W.C.C. began engaging in alleged inappropriate physical behavior and contact with A.W., which was of a violent and sexual nature. J.W. and M.R.W. informed DCFS caseworker Tacy and requested that W.C.C. be removed from

their home. Tacy, Hansen and Zumbrunnen, representing DCFS as case workers, met and discussed the issue. They informed J.W. and M.R.W. that if they removed W.C.C., M.W. would also be removed, despite plans to adopt her. J.W. and M.R.W. decided to try to make the placement work and DCFS provided no further information to the family.

In an attempt to remedy the situation, W.C.C. was placed in a day treatment program at Valley Mental Health for several months and then admitted to an in-patient program at Primary Children's Hospital. Following W.C.C.'s in-patient placement and removal from their home, J.W. and M.R.W. learned that W.C.C. had a prior history of violent and sexually inappropriate behavior. The instant case ensued.

## II. PROCEDURAL BACKGROUND

Plaintiffs filed a Notice of Claim on July 31, 2003. Plaintiffs claim that the State of Utah and its various employees acted improperly in failing to notify Plaintiffs of W.C.C.'s alleged prior history of improper conduct. The Notice of Claim provided:

> DCFS's conduct in failing to disclose [W.C.C.]'s uncontrollable, violent and sexually inappropriate behavior and by placing [W.C.C.] in the [W.'s] home given this history, constitutes negligence toward the [W's] and A.W., and constitutes a breach of the contract that existed between the [W.'s] as foster parents and DCFS.

The Notice of Claim did not identify any potential defendant other than DCFS. The Notice of Claim does not identify a claim for intentional infliction of emotional distress.

Plaintiffs filed a Complaint against the State of Utah, the Utah State Department of Human Services ("DHS"), and the Division of Child and Family Services ("DCFS"). These parties will be referred to as the "State Entities." Plaintiffs brought claims against the current and former DHS Executive Directors, Lisa-Michelle Church and Robin Arnold-Williams,

3

individually and in their official capacities.[1]  Plaintiffs also asserted claims against three DCFS employees, Carolyn Hansen, Kolyn Tacy, and Laurie Zumbrunnen (the "Individual Defendants"). Additionally, Plaintiffs asserted claims against the Individual Defendants' supervisor Richard Anderson, the Director of DCFS, purportedly based on his supervision and oversight of DCFS employees.  Collectively Church, Arnold-Williams and Anderson are known as the "Directors and Supervisors."

Plaintiffs filed an Amended Notice of Claim on January 17, 2006 (filed concurrently with Plaintiffs' Opposition to this Motion) which notified "the State of Utah, the Utah State Department of Human Resources, and the Division of Child and Family Services (collectively referred to as "DCFS." [in the Notice of Claim])" of Plaintiffs' claims.

In their Amended Complaint, Plaintiffs brought multiple claims against the Defendants. Plaintiffs assert that all of the Defendants infringed upon their civil rights in violation of the 4th, 5th, 8th, and 14th Amendments to the United States Constitution.  Plaintiffs claim that all of the Defendants acted negligently and allege various claims of negligence, including: negligent investigation, negligent reporting, negligent supervision, negligent infliction of emotional distress, negligent placement of foster children, and negligent failure to follow statutory law. Plaintiffs allege a variety of implied contract claims against all of the Defendants.  Plaintiffs also assert claims for intentional infliction of emotional distress against all of the Defendants.

---

[1] Robin Arnold-Williams, the former Executive Director of DHS, has not been served with process in this matter.

### III.  STANDARD OF REVIEW

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the factual allegations in the complaint, if true, would entitle the plaintiff to a legal remedy.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Dismissal is appropriate only when "the plaintiff can prove no set of facts in support of his claims to entitle him to relief."  *Cottrell, Ltd. v. Biotrol Int'l,* 191 F.3d 1248, 1251 (10th Cir. 1999).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah School for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  The court must accept all well-pled facts as true, construe those facts liberally in a light most favorable to the plaintiff, and "resolve all reasonable inferences in plaintiff's favor." *Seamons v. Snow,* 84 F.3d 1226, 1232 (10th Cir. 1996).  However, conclusory allegations without supporting factual averments need not be accepted.  *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 510 (10th Cir. 1998); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  The Federal Rules of Civil Procedure "erect a powerful presumption against rejecting pleadings for failure to state a claim."  *Cottrell*, 191 F.3d at 1251 (quotations omitted).  Granting a defendant's motion to dismiss is a "harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *Id.*  (quotations omitted).

## IV.  DISCUSSION

**A.  The Civil Rights Claims**

Plaintiffs seek damages under 42 U.S.C. § 1983 against all of the Defendants. Defendants contend that Section 1983 claims may not be asserted against the State Entities, Directors and Supervisors, or State employees in their official capacities. Defendants concede that the civil rights claims against the Individual Defendants survive this motion. Plaintiffs conceded at oral argument that the State Entities are not "persons" under Section 1983 and the civil rights claims against them do not survive this motion. Therefore the only issue before the court in this section is whether Plaintiffs' civil rights claims against the Directors and Supervisors may proceed.

Section 1983 provides a remedy against a "*person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and Laws . . ." 42 U.S.C. § 1983 (emphasis added). Defendants argue that the State Entities, Directors and Supervisors and State employees in their official capacities are not "persons" amenable to suit under Section 1983. *Harris v. Champion*, 51 F.3d 901, 905-907 (10th Cir. 1995) ("Neither the state, nor a governmental entity that is an arm of the state for Eleventh Amendment purposes, nor a state official who acts in his or her official capacity, is a "person" within the meaning of § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989)); *see also Watson v. University of Utah Med. Ctr.*, 75 F.3d 569, 575 (10th Cir. 1996) (holding University is arm of state not subject to suit under § 1983). Upon review, the Amended Complaint alleges that

Arnold-Williams and Church were acting in their official capacities at the time of the alleged violations. Amended Complaint, ¶¶ 5-7. As such, this court agrees with Defendants that the civil rights claims against the Arnold-Williams and Church should be dismissed.

Defendants allege that Anderson is not a proper defendant under Section 1983 because he was the Individual Defendants' supervisor. To succeed in a Section 1983 action against a supervisor, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation." *Jenkins v. Wood*, 81 F.3d 988, 995 (10th Cir. 1996). Section 1983 requires that Plaintiffs allege in their complaint and prove at trial an "affirmative link" between the supervisors' actual conduct and the constitutional violation. *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1156-57 (10th Cir. 2001); *see also Bennet v. Passic*, 545 F.2d 1260, 1262-1263 (10th Cir. 1976); *Jenkins*, 81 F.3d at 994-95 ("a plaintiff must establish a deliberate intentional act by the supervisor to violate constitutional rights"). After review of Plaintiffs' Amended Complaint, the Court is not satisfied that Plaintiffs have met this requirement. The allegations of the Amended Complaint make clear that claims asserted against Anderson are based on his supervision and oversight of the Individual Defendants not based on his individual actions. Amended Complaint, ¶¶ 5-8. Therefore the civil rights claims against Anderson are dismissed.

None of the Directors or Supervisors qualify as "persons" under Section 1983 under the facts as alleged in the Amended Complaint. Therefore only Plaintiffs' civil rights claims against Tacy, Hansen and Zumbrunnen survive this motion.

**B.  The Negligence Claims**

Defendants argue that all Defendants are immune from Plaintiffs' claims of negligence for several reasons: Defendants received insufficient notice of Plaintiffs' claims under the original Notice of Claim, the Amended Notice of Claim was procedurally improper to vest this court with jurisdiction and the Immunity Act grants immunity to "employees" acting within the scope of their duties.

*1.  The Notice of Claim and the Amended Notice of Claim*

Defendants claim that all Defendants are immune from Plaintiffs' negligence claims because the original Notice of Claim was insufficient notice as to the Individual Defendants as required under the Governmental Immunity Act, U.C.A. § 63-30-11 (the "Immunity Act").[2]  The Immunity Act requires a Notice of Claim to be filed whenever a person has a "claim for injury against a governmental entity, or against an employee for an act or omission occurring during the performance of his duties." *Id*.  A Notice of Claim under the Immunity Act must also contain: (i) a brief statement of the facts; (ii) nature of the claim asserted; and (iii) the damages incurred by the claimant so far as they are known." *Id*. at § 63-30-11(3).  "[S]uit may not be brought against the state or its subdivisions unless the requirements of the Governmental Immunity Act are strictly followed." *Hall v. Utah State Dep't of Corr.*, 2001 UT 34, ¶23, 24 P.3d 958.

Defendants allege that the original Notice of Claim stated that Plaintiffs were only pursuing claims against DCFS and that it failed to identify any other defendants or claims.

---

[2] Utah Code Ann. § 63-30-1 to § 63-30-38 was repealed in 2004.  It was replaced by the Governmental Immunity Act of Utah, Utah Code Ann. §63-30d-101 et seq., effective July 1, 2004.

Plaintiffs argue that the original Notice of Claim sufficiently identified the Individual Defendants to put them on notice of the claims Plaintiffs asserted.  However, in an attempt to clarify their claims, and perhaps in tacit recognition of the insufficiency of the original Notice of Claim, Plaintiffs filed an Amended Notice of Claim which more fully explained Plaintiffs' claims and listed each of the Individual Defendants at various places in the document.  Defendants admit that the Amended Notice of Claim referenced all of the various individuals as participants in the alleged wrongs but claim that it does not state nor preserve claims against the Defendants.  Moreover, had the Amended Notice sufficiently identified each Defendant and preserved claims against them, Defendants claim that the Amended Notice of Claim is procedurally improper.  *Hall*, 2001 UT ¶ 26 (explaining where notice of claim is filed on same day as complaint the State is deprived of opportunity to assess allegations, as required by statute, to determine whether to approve or deny claim).

Because Plaintiffs filed the Amended Notice of Claim after the filing of their Complaint the State has not had the requisite opportunity to approve or deny Plaintiffs' claims.  As such, this court lacks subject matter jurisdiction over any new claims arising in the Amended Notice of Claim.  *Id.*; *Dickey v. Dept. of Corr.*, 2004 UT App. 279, 2004 WL 1847079 ("Utah law is clear that plaintiffs with claims against the state may institute an action in the district court only after their claim is denied." (quoting *Hall*, 2001 UT 34 at ¶ 26 and Utah Code Ann. §63-30-15(1))).  Plaintiffs' procedurally improper filing of the Amended Notice of Claim "prevent[s] the district court from obtaining subject matter jurisdiction over [any new] cause of action" found in the Amended Notice of Claim.  *Dickey*, 2004 UT App. at ¶ 1.  Dismissal is required.

### *2. The Governmental Immunity Act*

Next, Defendants argue that all of the Defendants are immune from all of Plaintiffs' negligence claims based on Sections 63-30-4 and 63-30-10 of the Immunity Act because each of the Individual Defendants (including the Directors and Supervisors) were acting as employees of the State at all relevant times. Defendants claim that the Immunity Act broadly defines "employee" to include any governmental entity's "officers, employees . . . commissioners, members of a governing body, [or] members of a board." U.C.A. § 63-30-2(2)(a). If Defendants qualify as "employees" under the Immunity Act, it provides immunity to State employees for claims of negligence as follows:

> No employee may be held personally liable for acts or omissions occurring during the performance of the employee's duties, within the scope of employment, or under the color of authority, unless it is established that the employee acted or failed to act due to fraud or malice.

*Id.* at § 63-30-4(4); *see also Baker v. Angus*, 910 P.2d 427 (Utah App. 1996) (barring claims for simple negligence). Upon review of the Amended Complaint, this court is satisfied that each of the Individual Defendants and Supervisors were employees, as defined by Section 63-30-4(4) of the Immunity Act and may not therefore be held personally liable for negligence. *See id.;* Amended Complaint at ¶¶ 5-11.

Defendants argue that the State Defendants are similarly immune from negligence claims based on Section 63-30-10 of the Immunity Act. Defendants claim that a three-step approach should be used to determine the State's eligibility for immunity. *See Ledfors v. Emory County School Dist.*, 849 P.2d 1162, 1164 (Utah 1993). Courts must first determine whether an activity is a governmental function which is entitled to blanket immunity. Here, it is undisputed that the

State Defendants satisfy this step.  *See Sanders v. Leavitt*, 2001 UT 78, ¶ 29, 37 P.3d 1052.  The second step is to determine whether a different section of the Immunity Act waives the blanket immunity.  Assuming that the State has waived immunity, the third step is to decide whether an exception applies to preserve immunity.  *Id.*

Defendants claim that Section 63-30-10 of the Immunity Act provides that assault and battery is an exception which preserves the State's immunity in this case.  Plaintiffs, however, argue that the actions complained of in the Amended Complaint do not constitute civil assault and battery, which fall under the protections of Section 63-30-10, because the actions were committed by a mentally-handicapped child under the age of seven.  Plaintiffs argue that a different rule applies when the batterer is a child.  Plaintiffs' argument for a new exception to the Immunity Act is based on *Wagner v. Dept. of Human Services*, 2005 UT 54, 122 P.3d 599.  Despite Plaintiffs' arguments, the Utah Supreme Court concluded in *Wagner* that the "[l]inchpin to liability for battery is not a guilty mind but rather an intent to make a contact the law forbids" and held that the tort of battery "requires neither a 'desire to injure' nor a realization that the contact is injurious or offensive."  *Id*. at ¶ 31.  This court agrees with Defendants that all that is required is that the contact was "deliberately initiated" by W.C.C.  *Id*. at ¶ 49.  Clearly the repeated contacts alleged in the Amended Complaint were "deliberately initiated."  Amended Complaint, ¶ 69.  W.C.C.'s alleged conduct falls within the definition of common law assault and battery in Utah which preserves immunity in this case for the State Entities.  Dismissal of Plaintiffs' negligence claims is appropriate.

11

### C.  The Contract Claims

Defendants concede that the contract claim against the State Entities survives this motion. Defendants claim that because the original Notice of Claim did not assert contract claims against the Individual Defendants, Directors or Supervisors, claims against them are barred.  Defendants also argue that there exists no other contract between Plaintiffs and any of the individuals, whether written or implied.  Plaintiffs claim that implied contracts arose with the individuals based on Defendants attempt to act in the family's best interest and to follow the statute.  This court does not find that implied contracts have arisen between Plaintiffs and Defendants.  In order to bind a governmental entity there must be "very specific written representations by authorized government entities."  *Anderson v. Pub. Serv. Comm'n,* 839 P.2d 822, 827 (Utah 1992).  This court agrees with Defendants that it follows that establishing a binding contract on a state employee should be at least as rigorous.

### D. The Intentional Tort Claims

At oral argument Plaintiffs concede that the intentional infliction of emotional distress claims against the State Entities do not survive this motion.  Defendants allege that the remaining intentional tort claims against Church, Arnold-Williams, Anderson and the Individual Defendants fail because the Notice of Claim did not identify intentional tort claims against any of the remaining defendants.  Plaintiffs were required to do so in the original Notice of Claim.  *See e.g., Yearsley v. Jensen*, 798 P.2d 1127 (Utah 1990) (deeming plaintiff's notice insufficient to permit plaintiff to pursue assault and battery claim for failure to identify specific claim). Although Plaintiffs filed an Amended Notice which contained a "general notice of" the claim, as

discussed above, Plaintiffs Amended Notice is procedurally improper and fails to confer jurisdiction on this court to hear any new intentional tort claims which may have been contained in the Amended Notice. Therefore, Plaintiffs' intentional tort claims will be allowed only after the procedural defects have been cured.

## CONCLUSION

Accordingly, it is HEREBY ORDERED that Plaintiffs' Section 1983 Claims against the State Entities and the Supervisors and Directors are DISMISSED with prejudice. Plaintiffs' Section 1983 Claims against the Individual Defendants are not dismissed. All of Plaintiffs' Negligence Claims are DISMISSED with prejudice. Plaintiffs' Contract Claims against all of the Individual Defendants, Directors and Supervisors are DISMISSED with prejudice. Plaintiffs' Contract Claims against the State is not dismissed. Plaintiffs' Intentional Infliction of Emotional Distress Claims against the State Entities are DISMISSED with prejudice. Plaintiffs' Intentional Infliction of Emotional Distress Claims against the Individual Defendants, Directors and Supervisors are DISMISSED without prejudice.

DATED this 18th day of April, 2006.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge